IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

OSCAR COLUMBUS WARD,

    Petitioner,                      No. CIV S-10-0034 GEB EFB P

    vs.

DENNIS KRIS SISTO, et al.,

    Respondents.                  FINDINGS AND RECOMMENDATIONS

_____/

    Petitioner is a state prisoner proceeding *in propria persona* with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges the decision of the California Board of Parole Hearings (hereinafter "Board") to deny him parole at a parole consideration hearing held on November 6, 2007.

    Petitioner argues, among other things, that the Board's 2007 decision finding him unsuitable for parole violates his right to due process. As discussed below, the United States Supreme Court has held that the only inquiry on federal habeas review of a denial of parole is whether the petitioner has received "fair procedures" for vindication of the liberty interest in parole given by the state. *Swarthout v. Cooke*, 562 U.S. ___, No. 10-333, 2011 WL 197627, at *2 (Jan. 24, 2011) (per curiam). In the context of a California parole suitability hearing, a petitioner receives adequate process when he/she is allowed an opportunity to be heard and a

statement of the reasons why parole was denied. *Id.* at \*\*2-3 (federal due process satisfied where petitioners were "allowed to speak at their parole hearings and to contest the evidence against them, were afforded access to their records in advance, and were notified as to the reasons why parole was denied"); *see also Greenholtz v. Inmates of Neb. Penal*, 442 U.S. 1, 16 (1979). For the reasons that follow, applying this standard here requires that the petition for writ of habeas corpus be denied on petitioner's due process claims.

**I. Procedural Background**

Petitioner is confined pursuant to a 1971 judgment of conviction entered against him in the Los Angeles County Superior Court following his conviction on charges of first degree murder and second degree burglary. Pet. at 1.[1] Pursuant to that conviction, petitioner was sentenced to seven years to life in prison. *Id.*

The parole consideration hearing that is placed at issue by the instant petition was held on November 6, 2007. *Id.* at 101. Petitioner appeared at and participated in the hearing. *Id.* at 103-177. Following deliberations held at the conclusion of the hearing, the Board panel announced their decision to deny petitioner parole for three years and the reasons for that decision. *Id.* at 178-187.

Petitioner challenged the Board's 2007 decision in a petition for writ of habeas corpus filed in the Los Angeles County Superior Court. Answer, Ex. 1. The Superior Court denied that petition in a decision on the merits of petitioner's claims. *Id.*, Ex. 2. Petitioner subsequently challenged the Board's 2007 decision in a petition for writ of habeas corpus filed in the California Court of Appeal. *Id.*, Ex. 3. That petition was also denied in a reasoned decision. *Id.*, Ex. 4. Petitioner subsequently filed a petition for review in the California Supreme Court. *Id.*, Ex. 5. That petition was summarily denied. *Id.*, Ex 6.

////

---

[1] Page number citations such as these are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

## II. Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. *Early v. Packer*, 537 U.S. 3, 7 (2002) (*citing Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be

unreasonable." *Id.* at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citations omitted) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

### III. Petitioner's Claims

In his first ground for relief, petitioner claims that he:

> was sentenced to life with the possibility of parole (murder first CC WPT) his sentence had/has been extended to life without the possibility of parole and or death sentence under 37 years and 6 months served to date and CDCR officials and their Community Release Board, Board of Prison Terms officials and Board of Parole Hearings officials failed to afford prisoner a serious offender hearing under ISL and DSL to fix his term is clearly concrete prejudice, illegal, unlawful, overtime incarceration and cruel and unusual punishment to defer parole for three years."

Pet. at 5, 13. In his second ground for relief, petitioner claims that:

> The Community Release Board and the Board of Prison Terms and the Board of Parole Hearings has and continue to restate manipulate transform and convert the instant term of 7 years MEPD to life without the possibility of parole by using the crime under inapplicable unsuitable criteria under special aggravating circumstances elements factors – cruel, callous, cold, calculated as some evidence to defer parole for three years.

*Id.* at 5, 18.

In his third ground for relief, petitioner claims that "The Board's decision to defer Mr. Ward's next parole consideration hearing for three [y]ears was unlawful and violated his right to an annual review." *Id.* at 5. In his fourth ground for relief, petitioner claims that "the Board's 2007 decision to deny parole to Mr. Ward was arbitrary and capricious and violated his due process rights under California law and the California Constitution." *Id.*

Petitioner's grounds for relief are overlapping and repetitive. After review, this court construes petitioner's arguments as raising claims that the Board's 2007 decision finding him

4

unsuitable for parole violated state law and regulations, his federal rights to due process and equal protection, his Eighth Amendment right to be free from cruel and unusual punishment, and the Ex Post Facto Clause.  For the reasons set forth below, all of these claims fail.

**A.  Due Process**

Petitioner argues throughout the petition and traverse that the Board's 2007 decision finding him unsuitable for parole was arbitrary and unfair, in violation of the federal due process clause.  He also appears to be claiming that the Board's decision to defer his next parole suitability hearing for three years violated his right to due process.

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law.  A litigant alleging a due process violation must first demonstrate that he was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient.  *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 459-60 (1989).

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an expectation or interest created by state laws or policies."  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted).  *See also Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set.  *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981); *Greenholtz v. Inmates of Neb. Penal*, 442 U.S. 1, 7 (1979) (There is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); *see also Hayward v. Marshall*, 603 F.3d 546, 561 (9th Cir. 2010) (en banc).  However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest."  *Greenholtz*, 442 U.S. at 12).  *See also Allen*, 482

5

1  U.S. at 376-78.

2  California's parole scheme[2] gives rise to a liberty interest in parole protected by the
3  federal due process clause. *McQuillion v. Duncan*, 306 F.3d 895, 902-03 (9th Cir. 2002)
4  ("California's parole scheme gives rise to a cognizable liberty interest in release on parole."); *see*
5  *Swarthout v. Cooke*, No. 10-333, 562 U.S. ___, 2011 U.S. LEXIS 1067, *5-6 (Jan. 24, 2011)
6  (per curiam) (stating that the Ninth Circuit's determination that California's parole law creates a
7  liberty interest protected by the federal due process clause "is a reasonable application of our
8  cases."). However, the United States Supreme Court has held that correct application of
9  California's "some evidence" standard is not required by the federal Due Process Clause.
10 *Swarthout*, 2011 WL 197627, at *2. Rather, this court's review is limited to the narrow question
11 of whether the petitioner has received adequate process for seeking parole. *Id.* at *3. ("Because
12 the only federal right at issue is procedural, the relevant inquiry is what process [petitioner]
13 received, not whether the state court decided the case correctly.") Adequate process is provided
14 when the inmate is allowed a meaningful opportunity to be heard and a statement of the reasons
15 why parole was denied. *Id.* at **2-3 (federal due process satisfied where petitioners were
16 "allowed to speak at their parole hearings and to contest the evidence against them, were
17 afforded access to their records in advance, and were notified as to the reasons why parole was
18 denied"); *see also Greenholtz*, 442 U.S. at 16.

19 Here, the record reflects that petitioner was present at the 2007 parole hearing, that he
20 participated in the hearing, and that he was provided with the reasons for the Board's decision to
21 deny parole. Pursuant to *Swarthout*, this is all that due process requires. Accordingly, petitioner
22 is not entitled to relief on his due process claims.

23 ////

24

---

25  [2] In California, a prisoner is entitled to release on parole unless there is "some evidence"
26 of his or her current dangerousness. *In re Lawrence*, 44 Cal.4th 1181, 1205-06, 1210 (2008); *In re Rosenkrantz*, 29 Cal.4th 616, 651-53 (2002).

6

**B. Eighth Amendment**

Petitioner claims that, by relying on the immutable facts of his crimes and past history to find him unsuitable for parole, and by deferring his next suitability hearing for a three year period, the Board has transformed his sentence of life with the possibility of parole into a sentence of life without the possibility of parole or a death sentence, in violation of the Eighth Amendment proscription against cruel and unusual punishment. Pet. at 16-17. To the extent these claims have been exhausted in state court, they lack a factual basis and should be denied.

Petitioner is incorrect that his sentence has been changed to one of life without the possibility of parole or a death sentence. Petitioner will continue to receive parole suitability hearings and will be released if he demonstrates he is suitable for parole. Petitioner was sentenced to a term of seven years to life in prison. That sentence contemplates a potential life term in prison – a grant of parole is not mandatory, but merely possible. While petitioner might have hoped or expected to be released sooner, the Board's decision to deny him a parole release date has not enhanced his punishment or sentence. Accordingly, petitioner is not entitled to federal habeas relief with respect to this claim.

To the extent petitioner is claiming his sentence of life in prison for first degree murder violates the Eight Amendment, that claim should also be denied. Petitioner has not demonstrated that his sentence is grossly disproportionate to his crimes. *See Lockyer v. Andrade*, 538 U.S. 63 (2003); *Ewing v. California*, 538 U.S. 11 (2003); *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991); *Solem v. Helm*, 463 U.S. 277, 290 (1983); *Rummel v. Estelle*, 445 U.S. 263, 272 (1980).

**C. Ex Post Facto**

Petitioner contends that the 2007 Board violated his constitutional rights by applying the suitability criteria applicable under California's Determinate Sentencing Law (DSL) to his case, when he was instead convicted under the Indeterminate Sentencing Law (ISL). Pet. at 13-14,

////

////

7

Traverse at 7.[3]  To the extent petitioner is raising a claim pursuant to the Ex Post Facto Clause, it must be denied.

Petitioner was convicted of first-degree murder and sentenced to life imprisonment under California's Indeterminate Sentencing Law (ISL) in 1976.  In 1977, California repealed the ISL and enacted the current Determinate Sentencing Law (DSL).  Petitioner has been considered for parole under DSL guidelines since that time and has been found unsuitable for release at all suitability hearings.  He appears to be arguing that application of the current parole regulations to him violates the Ex Post Facto Clause.

The Constitution provides that "No State shall . . . pass any . . . ex post facto Law." U.S. Const. art. I, § 10.  A law violates the Ex Post Facto Clause of the United States Constitution if it:  (1) punishes as criminal an act that was not criminal when it was committed; (2) makes a crime's punishment greater than when the crime was committed; or (3) deprives a person of a defense available at the time the crime was committed.  *Collins v. Youngblood*, 497 U.S. 37, 52

---

[3] Under the ISL, courts were required to sentence individuals convicted of a crime to state prison for the range prescribed by law, but were prohibited from establishing the length of time within the statutory range that the individual would serve.  "Responsibility for determining the actual length of time within the statutory maxima and minima the convicted person [was] to serve in prison and/or on parole [was] vested with the Adult Authority. . . ."  *In re Rodriguez*, 14 Cal.3d 639, 645 (1975).  After enactment of the DSL in 1977, California Penal Code § 1168 provided (and now provides):

> (a) Every person who commits a public offense, for which any specification of three time periods of imprisonment in any state prison is now prescribed by law or for which only a single term of imprisonment in state prison is specified shall, unless such convicted person be placed on probation, a new trial granted, or the imposing of sentence suspended, be sentenced pursuant to Chapter 4.5 (commencing with section 1170) of Title 7 of Part 2.
>
> (b) For any person not sentenced under such provision, but who is sentenced to be imprisoned in the state prison, including imprisonment not exceeding one year and one day, the court imposing the sentence shall not fix the term or duration of the period of imprisonment.

(1990). The Ex Post Facto Clause "is aimed at laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." *Himes v. Thompson*, 336 F.3d 848, 854 (9th Cir. 2003) (quoting *Souch v. Schaivo*, 289 F.3d 616, 620 (9th Cir. 2002)). *See also Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 504 (1995). The Ex Post Facto Clause is also violated if: (1) state regulations have been applied retroactively to a defendant; and (2) the new regulations have created a "sufficient risk" of increasing the punishment attached to the defendant's crimes. *Himes*, 336 F.3d at 854. Not every law that disadvantages a defendant is a prohibited ex post facto law. The retroactive application of a change in state parole procedures violates ex post facto only if there exists a "significant risk" that such application will increase the punishment for the crime. *See Garner v. Jones*, 529 U.S. 244, 259 (2000).

Here, the Board's application of the DSL guidelines did not increase petitioner's sentence: petitioner's sentence of seven years to life carries no guaranteed parole date but rather carries with it the potential that he could serve the entire term. Further, any changes between ISL and DSL standards of parole do not change the definition of the crime nor increase the punishment for murder because "the DSL guidelines require consideration of the same criteria as did the ISL." *Connor v. Estelle*, 981 F.2d 1032, 1034 (9th Cir. 1992). Accordingly, the application of the DSL parole-suitability guidelines to prisoners sentenced under the ISL does not violate the federal constitutional prohibition against ex post facto laws. *Id.* The California Supreme Court has held that a prisoner sentenced under the ISL is entitled to have his release date calculated under either the ISL or DSL procedures, whichever is more beneficial. *See In re Stanworth*, 33 Cal.3d 176 (1982). Thus, petitioner is not disadvantaged by application of either standard.

Petitioner also claims that the Board violated his constitutional rights when it postponed his next suitability hearing for three years. Pet. at 19. To the extent petitioner is raising an ex post facto challenge to the Board's decision in this regard, his claim should be denied. *See Morales*, 514 U.S. at 509 (1981 amendment to Cal. Penal Code § 3041.5, which increased

9

1 maximum deferral period of parole suitability hearings to five years did not violate the Ex Post
2 Facto Clause because it simply altered the method of setting a parole release date and did not
3 create a meaningful "risk of increasing the measure of punishment attached to the covered
4 crimes"); *Watson v. Estelle*, 886 F.2d 1093, 1097-98 (9th Cir. 1989) (not a violation of the Ex
5 Post Facto Clause to apply § 3041.5(b)(2)(A) to prisoners sentenced to life imprisonment prior to
6 the implementation of California's Determinate Sentence Law in 1977); *Clifton v. Attorney
7 General Of the State of California*, 997 F.2d 660, 662 n.1 (9th Cir. 1993) (same). *See also
8 Garner v. Jones,* 529 U.S. 244, 249 (2000) (upholding Georgia's change in the frequency of
9 parole hearings for prisoners serving life sentences, from three to eight years, in an action
10 brought pursuant to 42 U.S.C. § 1983).[4]

11 In light of the above, the state courts' rejection of petitioner's Ex Post Facto claims was
12 neither contrary to, nor an unreasonable application of, controlling principles of United States
13 Supreme Court precedent. Therefore, petitioner is not entitled to habeas relief on those claims.

**D. Equal Protection**

15 Petitioner claims that "the Equal Protection Clause essentially requires that all persons
16 similarly situated be treated alike is lacking here." Pet. at 17. He states that he "complains as
17 here of specific mistreatment not generally suffered by all the Inmates sentenced to Life with the
18 possibility of parole under the Former/Old ISL." *Id.* at 16. Petitioner also alleges "racial
19 discrimination in administration of prisoners." *Id.* at 17.

20 To the extent these equal protection claims have been exhausted in state court, they are
21 vague and conclusory and should be denied on that basis. *See Jones v. Gomez*, 66 F.3d 199, 204

---

[4] Recently the Ninth Circuit overturned a district court decision granting preliminary injunctive relief to plaintiffs in a class action seeking to prevent the Board from enforcing the increased deferral periods established by a recent amendment to Cal. Penal Code § 3041.5 (Marsy's Law). *Gilman v. Schwarzenegger*, ___ F.3d ___, No. 10-15471, 2011 WL 198435 (9th Cir. Jan. 24, 2011). The court concluded that plaintiffs had failed to demonstrate a significant risk that their incarceration would be prolonged by application of Marsy's Law, and thus found that plaintiffs had not established a likelihood of success on the merits of their ex post facto claim.

(9th Cir. 1995) ("'[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief'") (quoting *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994)). Petitioner has failed to demonstrate that he was treated differently from other similarly situated prisoners or that the Board in 2007 lacked a rational basis for its decision finding him unsuitable for parole. *McGinnis v. Royster*, 410 U.S. 263, 269-70 (1973); *McQueary v. Blodgett*, 924 F.2d 829, 835 (9th Cir. 1991). Rather, petitioner was treated equally to other indeterminate life-term inmates seeking parole in that he was given a hearing pursuant to state law where his individual circumstances were considered in determining whether he was suitable for parole. Accordingly, petitioner is not entitled to relief on his equal protection claims.

**E. State Law Claims**

In both the petition and traverse, petitioner argues that the Board failed to comply with state laws and regulations when it found him unsuitable for parole at the 2007 hearing. Petitioner's arguments that the Board, and state courts upholding the Board's decision, erred in applying state law are not cognizable in this federal habeas corpus proceeding. *See Rivera v. Illinois*, ___ U.S. ___, 129 S.Ct. 1446, 1454 (2009) ("[A] mere error of state law . . . is not a denial of due process") (quoting *Engle v. Isaac*, 456 U.S. 107, 121, n. 21 (1982) and *Estelle v. McGuire*, 502 U.S. 62, 67, 72-73 (1991)). Accordingly, petitioner is not entitled to relief on his claims alleging violations of state law.

**IV. Request for Evidentiary Hearing**

Petitioner requests an evidentiary hearing on his claims.

Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under the following circumstances:

> (e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> (A) the claim relies on-

////

>(I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
>(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
>(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense[.]

Under this statutory scheme, a district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." *Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999). *See also Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir. 2005); *Insyxiengmay v. Morgan*, 403 F.3d 657, 669-70 (9th Cir. 2005). A petitioner requesting an evidentiary hearing must also demonstrate that he has presented a "colorable claim for relief." *Earp*, 431 F.3d at 1167 (citing *Insyxiengmay*, 403 F.3d at 670, *Stankewitz v. Woodford*, 365 F.3d 706, 708 (9th Cir. 2004) and *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001)). To show that a claim is "colorable," a petitioner is "required to allege specific facts which, if true, would entitle him to relief." *Ortiz v. Stewart*, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation marks and citation omitted).

The court concludes that no additional factual supplementation is necessary in this case and that an evidentiary hearing is not appropriate with respect to the due process claim raised in the instant petition. The facts alleged in support of these claims, even if established at a hearing, would not entitle petitioner to federal habeas relief. Therefore, petitioner's request for an evidentiary hearing should be denied.

/////

/////

/////

/////

## V. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's request for an evidentiary hearing be denied;

2. Petitioner's application for a writ of habeas corpus be denied; and

3. The Clerk be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

In any objections he elects to file, petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant); *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc) (prisoners are required to obtain a certificate of appealability to review the denial of a habeas petition challenging an administrative decision such as the denial of parole by the parole board).

DATED: March 23, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE